IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID KYLE BOCKOVEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09-cv-0802 |
| | ) | Judge Trauger |
| CARL WATTS, in his individual and official | ) | |
| capacities, JOHN DOE, and | ) | |
| THE MUNICIPAL GOVERNMENT OF | ) | |
| THE CITY OF MURFREESBORO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Pending before the court is the Motion for Summary Judgment filed by defendants Carl Watts and the City of Murfreesboro (Docket No. 22). For the reasons discussed below, the defendants' motion will be granted.

## FACTS

The plaintiff, David Bockoven, alleges that defendant Carl Watts, a Murfreesboro, Tennessee police officer, used excessive force when arresting him.[1] On September 1, 2008, the plaintiff attended a party at a friend's apartment in Murfreesboro. By 4 a.m., Watts was dispatched to investigate an excessive noise complaint at the apartment complex. Watts saw as many as 30 people crowded onto the balconies of several apartments, and he interviewed various

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of undisputed facts (Docket No. ) and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

partygoers, including the plaintiff.  The plaintiff told Watts that, over the course of the night, he had consumed four or five beers and two shots of liquor. Watts told the plaintiff, who was intoxicated, to return to his friend's apartment for the night.

Shortly thereafter, Watts saw the plaintiff on the balcony of another apartment.  Also, at some point, Watts learned that the plaintiff had asked residents of a different apartment to tell the police that he lived there.  The residents refused, and, according to Watts's affidavit, it was "clear" that the plaintiff was "unwelcome there."  (Docket No. 22, Ex. 2 ¶ 6.)  Because of this, and because he had already given the plaintiff one opportunity to return to his friend's apartment, Watts decided to arrest the plaintiff for disorderly conduct, public intoxication, and criminal trespass.

Watts called the plaintiff to come down to Watts's patrol car.  Watts attempted to place handcuffs on the plaintiff; after he cuffed the plaintiff's left hand, however, "movements" by the plaintiff prevented him from cuffing the plaintiff's right hand and "caused [him] to believe [the plaintiff] was resisting."  (Docket No. 22, Ex. 2 ¶ 7 (affidavit of Watts).)  At his deposition, the plaintiff admitted that he "jumped" or "flinched" as Watts attempted to cuff his right hand. (Docket No. 25, Ex. 1 at 113.)

In an attempt to get the plaintiff under control, Watts "used a pinning technique and pushed [the plaintiff] against [Watts's] patrol car with [his] forearm."  (Docket No. 22, Ex. 2 ¶ 8.)  In the process, the plaintiff hit his face against the lights on top of the car, and he sustained a cut near his eye.  In his affidavit, Watt states that he "did not intend to cause [the plaintiff] to sustain any injury, including this cut . . . ; the object was solely to control the arrestee."  (*Id.* ¶

2

12.) Watts states that he was acting according to training he had received as a police officer. (*Id.* ¶¶ 8-9.) The defendants have submitted the expert testimony of Dennis Mays, a former commander in the Jackson, Tennessee police department, that it was "proper police procedure" to stabilize the plaintiff against the patrol car. (Docket No. 22, Ex. 1 at 8.)

The plaintiff was indicted for public intoxication, disorderly conduct, criminal trespass, and resisting arrest. He eventually pleaded guilty to disorderly conduct.

Immediately following the arrest, Watts took the plaintiff to the Middle Tennessee Medical Center for treatment of the cut, where the plaintiff received stitches. Although the plaintiff wanted to undergo a CAT scan, he was unable to do so, because Watts refused to remove his handcuffs. The plaintiff eventually received a CAT scan within several days of the incident. He received no further medical treatment, aside from antibiotics and the eventual removal of the stitches.

In his Complaint, the plaintiff asserts claims for (1) battery, (2) deprivation of civil rights caused by Watts's excessive force, (3) negligence by the City of Murfreesboro for failure of the police department to enforce its policies or train its employees, and (4) "failure to train and discipline" on the same grounds. (Docket No. 1 ¶¶ 27-43.) The defendants have filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, to which the plaintiff has not responded.

## ANALYSIS

I. **Summary Judgment Standard**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A non-moving party's failure to respond to a motion "'indicates there is no opposition to the motion.'" *Johnson v. Jackson County Sheriff's Dep't*, No. 2:08-0033, 2009 U.S. Dist. LEXIS 33078, at *2 (M.D. Tenn. Apr. 17, 2009) (quoting M.D. Tenn. Local R. 7.01(b)). More specifically, failure to respond to a motion for summary judgment "'shall indicate that the asserted facts are not disputed for the purposes of summary judgment.'" *Id.* (quoting M.D. Tenn. Local R. 56.01(g)).

But the court will not grant the defendants' Motion for Summary Judgment solely on the ground that the plaintiff did not respond. *Id.* (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). The Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure he has discharged [his initial] burden. . . . The federal rules require the party filing a motion for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact.

*Stough*, 138 F.3d at 614 (quotation marks omitted) (second alteration in original); *see also Miller v. Shore Fin. Servs., Inc.*, 141 Fed. Appx. 417, 419 (6th Cir. 2005). Consequently, the court must examine the defendants' evidence to determine whether they have sufficiently met their burden.

## II.   Excessive Force

Although the statute is not mentioned in his Complaint, it appears that the plaintiff is asserting claims under 42 U.S.C. § 1983, which allows a plaintiff to sue for a "deprivation of any rights . . . secured by the Constitution" that occurs under color of law. 42 U.S.C. § 1983.

In the context of arrests, excessive-force § 1983 claims are properly framed as claims for violation of the plaintiff's Fourth Amendment rights. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Sixth Circuit recently explained:

> Claims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene. An officer making an investigative stop or arrest has the right to use some degree of physical coercion or threat thereof to effect it. The question we

5

> must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable.

*Miller v. Sanilac County*, 606 F.3d 240, 251 (6th Cir. 2010) (quotation marks and citations omitted). Furthermore:

> In determining whether there has been a violation of the Fourth Amendment, we consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The question whether force is excessive turns on the objective reasonableness of the officer's conduct under the circumstances. The Supreme Court has provided three factors for courts to consider in evaluating an excessive force claim: the severity of the crime, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight.

*Id.* at 252-53 (quotation marks, citations, and paragraph break omitted).

Here, the plaintiff later pleaded guilty to disorderly conduct, he was admittedly intoxicated at the time of arrest, and Watts had probable cause to believe that the plaintiff had criminally trespassed in at least one apartment. Leading up to the arrest, the plaintiff had failed to follow Watts's orders. Furthermore, Watts was the only police officer on the scene, with the exception of an off-duty officer who lived at the apartment complex and who was on crutches. The undisputed facts show that Watts briefly used force in an attempt to control the plaintiff, not to injure him. In light of these circumstances, the defendants have sufficiently shown that, after the plaintiff protested against being handcuffed, Watts used a reasonable amount of force to place him under control. *See Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (approving of the use of force after the arrestee "twisted and turned some" during handcuffing).

6

Accordingly, the court will dismiss the plaintiff's § 1983 claims in their entirety.[2]

Because Watts is not liable for violating the plaintiff's constitutional rights, there can be no municipal liability against defendant City of Murfreesboro. *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 545 (6th Cir. 2003).

## III. Pendent State-Law Claims

The court will decline to exercise supplemental jurisdiction over the plaintiff's remaining state-law battery and negligence claims. 28 U.S.C. § 1367(c)(3); *see also, e.g.*, *Risser v. Metro. Gov't of Nashville & Davidson County*, No. 3:09-0386, 2009 U.S. Dist. LEXIS 58673, at *15 (M.D. Tenn. July 7, 2009) (noting the "broad discretion" that federal district courts have in dismissing state-law claims when all federal claims have been dismissed); *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (stating that "the balance of considerations usually will point to dismissing the state law claims"). These claims will be dismissed without prejudice for the plaintiff to refile them in state court.

---

[2] The defendants further argue that they are not liable under the Fourteenth Amendment for Watts's decision to not allow the plaintiff to receive a CAT scan. (Docket No. 23 at 12-19.) First, the plaintiff's Complaint does not appear to assert a claim based on a failure to provide adequate medical treatment. Instead, the plaintiff's claims are entirely based on the allegedly excessive force Watts used when pushing the plaintiff against the patrol car. (*See* Docket No. 1 ¶¶ 27-33.) Second, even if the plaintiff were asserting such a claim, the evidence does not show that Watts was deliberately indifferent to the plaintiff's health. *See Owensby v. City of Cincinnati*, 414 F.3d 596, 603 (6th Cir. 2005) (requiring, for liability, that the defendant "'knew of and disregarded a substantial risk of serious harm to [the pretrial detainee's] health and safety'" (alteration in original)). Nor does anything indicate that the plaintiff had a "serious need for [a CAT scan] that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 604. Third, the plaintiff received a CAT scan within, at most, four days after the incident. (Docket No. 25, Ex. 1 at 130.) Apparently, the scan was negative, because the plaintiff received no further medical treatment. (*Id.*) There is no evidence that the plaintiff suffered any harm from the lack of an immediate CAT scan.

## **CONCLUSION**

For the reasons discussed herein, the defendants' Motion for Summary Judgment (Docket No. 22) is **GRANTED**. The plaintiff's 42 U.S.C. § 1983 claims are hereby **DISMISSED** with prejudice, and his state-law battery and negligence claims are hereby **DISMISSED** without prejudice to refile in state court. Entry of this Order shall constitute the judgment in this case.

It is so Ordered.

Entered this 18th day of February 2011.

_____
ALETA A. TRAUGER
United States District Judge